UNITED STATES of America

v.

BRAKES, Inc., Lawrence Johnson, Charles W. Libby, Joseph L. Wittman and Archie Stevens.

United States District Court
S. D. New York.

Jan. 10, 1958.

---

3. Repealed by Act No. 218, Pub.Acts Mich. 1956, effective Jan. 1, 1957, now Comp.Laws Supp.Mich.1956, § 500.7800 et seq.

Paul W. Williams, U. S. Atty., S.D. New York, for the United States, Robert W. Bjork, Asst. U. S. Atty., New York City, of counsel.

William W. Kleinman, Brooklyn, N. Y., for Brakes, Inc., a dissolved corporation. Daniel H. Greenberg, New York City, of counsel.

PALMIERI, District Judge.

These are motions by the corporate defendant, Brakes, Inc., to quash a summons directing it to appear and answer the indictment, and to dismiss the indictment. These motions are based upon its voluntary dissolution, pursuant to New York State law, in April, 1955, slightly more than two years before the filing of the indictment.

Brakes, Inc., a New York corporation, was engaged in the manufacture and repair of automotive brake parts. A part of its business was done under Government contracts entered into prior to 1955. The indictment, filed in June 1957, charged it, along with three of its officers and other individuals, with conspiracy to violate 18 U.S.C. § 1001 (1952) and to defraud the United States by delivering to the Government counterfeit and inferior automotive brake parts which included rubber diaphragms bearing the spurious insignia and trademark of the Bendix-Westinghouse Automotive Air Brake Company. The indictment also charges eight substantive violations of 18 U.S.C. §§ 1001, 1002 (1952) in filing false certificates with the Department of the Army in connection with these sales.

A Federal Grand Jury in this District was engaged in November, 1955, in an investigation of the charges which resulted in this indictment. The defendant Lawrence Johnson, the sole stockholder, president, and a director of defendant Brakes, Inc., was recently adjudged guilty of a criminal contempt by Judge Walsh [1] because of his willful failure to produce the corporation's records pursuant to Grand Jury subpoenas *duces tecum.* That judgment has been affirmed by the Court of Appeals.[2] There, it was urged that corporate dissolution absolved Johnson from responsibility for producing the books and records of the corporation. In rejecting this argument, the Court of Appeals rested upon the contemnor's non-compliance with New York law. It pointed to § 106(5) of the New York Stock Corporation Law, McKinney's Consol.Laws, c. 59 which requires the directors of a dissolved corporation to preserve the corporate records until their destruction might be sanctioned by a court order; and the Court concluded that since no such order was shown to have been entered before the subpoenas were served, the dissolu-

---

1. Fed.R.Crim.P. 42, 18 U.S.C. Order of Judgment and Commitment dated May 28, 1957, Criminal Docket No. 153–38.

2. United States v. Johnson, 2 Cir., 247 F.2d 5, certiorari denied 78 S.Ct. 116.

tion of the corporation did not relieve Johnson of his duty to comply with the subpoenas *duces tecum*. United States v. Johnson, 2 Cir., 247 F.2d 5, 7, certiorari denied 78 S.Ct. 116.

It should be noted, in passing, that Brakes, Inc. was succeeded in the same business, and without interruption, by a corporation with almost the identical name, employing the same personnel and physical equipment, but with shifts in officers and stock ownership among the same individuals previously connected with Brakes, Inc.

The last overt act charged in the conspiracy count, in point of time, is that " * * * on or about the 18th day of April, 1955, Lawrence Johnson caused the dissolution of Brakes, Inc."

Essentially, the question raised by the defendant corporation's motions is whether its voluntary dissolution prior to indictment sweeps away its liability to criminal prosecution.[3] This problem is one which has received considerable comment in legal periodicals.[4] The Supreme Court, in Oklahoma Natural Gas Co. v. State of Oklahoma, 1927, 273 U.S. 257, 47 S.Ct. 391, 392, 71 L.Ed. 634, was not considering a dissolved corporation's liability to federal criminal process. But the Court did say that "[i]t is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect. * * * [I]f the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation." Although there are statements to the contrary,[5] this statement has generally been taken to mean that dissolved corporations may be prosecuted for violations of the federal criminal law only if the statutes of the state in which the corporation was organized provide for such prosecution.[6] Resolution of the question upon this basis, however, leads to the undesirable result of founding federal criminal jurisdiction upon the varying corporation statutes of the states.[7]

3. I have consulted Judge Murphy about a threshold matter raised by the defendant, namely, the assertion that Judge Murphy had already ruled, when the other defendants pleaded, that no plea should be entered for the corporate defendant. I am assured that no ruling was made and none was intended. Cf. Fed.R. Crim.P. 11.

4. Marcus, Suability of Dissolved Corporations—A Study in Interstate and Federal-State Relationships, 58 Harv.L. Rev. 675 (1945); Comment, Corporate Dissolution and the Anti-Trust Laws, 21 U. of Chi.L.Rev. 480 (1954).

5. Alamo Fence Co. of Houston v. United States, 5 Cir., 1957, 240 F.2d 179, 183; Marcus, supra note 4 at pages 698–702; and see footnote 6, infra.

6. See cases cited in footnote 7, infra. The Texas statute has been construed to provide for maintenance of state, but not federal, criminal prosecutions. United States v. Safeway Stores, 10 Cir., 1944, 140 F.2d 834, 839; United States v. Leche, D.C.E.D.La.1942, 44 F.Supp. 765, 767. In Alamo Fence Co. of Houston v. United States, 5 Cir., 1957, 240 F.2d 179, 183, the Court said: "[T]he

Texas Legislature did not *undertake* to provide either for the abatement or for the survival of a federal criminal proceeding because that simply was not within its province."

7. State statutes providing that "suits" may be maintained against dissolved corporations have been held not to permit maintenance of federal criminal prosecutions in United States v. United States Vanadium Corp., 10 Cir., 230 F.2d 646, certiorari denied 1956, 351 U.S. 939, 76 S.Ct. 836, 100 L.Ed. 1466 (corporations merged after criminal proceedings begun; Del. and W.Va. law); United States v. Line Material Co., 6 Cir., 1953, 202 F.2d 929 (merger after indictment; Del. law); United States v. Safeway Stores, 10 Cir., 1944, 140 F.2d 834 (dissolution prior to indictment; Del. and Nev. law). In United States v. Maryland State Licensed Beverage Ass'n, D.C.D.Md.1956, 138 F.Supp. 685, 706–709, reversed after trial on other grounds, 4 Cir., 1957, 240 F.2d 420, the Delaware and Maryland statutes were held to permit maintenance of a federal criminal action against corporations dissolved after the filing of the indictment. The question under Delaware law ("any

■■ An examination of the cases cited in footnote 7 reveals the confusion into which this subject has been thrown by reference to the varying provisions of state law. I am of the opinion, however, that the New York statute here applicable plainly preserves the amenability of the defendant corporation to federal criminal prosecution. Since I do not wish to make rulings beyond the necessities of this case, I only note my opinion that it is undesirable to allow punishment for violation of a federal law to depend on the vagaries of language found in state corporation statutes; and I entertain serious doubt as to the power of a state to insulate a corporation from federal criminal jurisdiction.[8] In the absence of a Congressional enactment or a statement in the Federal Criminal Rules,[9] however, I must turn to a consideration of the applicable New York law.

Defendant corporation was voluntarily dissolved under the provisions of N.Y. Stock Corporation Law, § 105. Subdivision 8 of that law provides as follows:

"Such corporation shall continue for the purpose of paying, satisfying and discharging any existing liabilities or obligations, collecting and distributing its assets and doing all other acts required to adjust and wind up its business and affairs, and may sue and be sued in its corporate name."

Defendant contends that the provision that a dissolved corporation "may sue and be sued" does not continue its existence for the purpose of defending a federal criminal action. Reliance is placed on the cases cited in the first paragraph of footnote 7, *supra*. This is not the sole provision of subdivision 8, however. Provision is also made for the "paying, satisfying and discharging of any existing liabilities or obligations * * *." There do not appear to be any decisions construing the meaning of these words in this statute in their relation to criminal prosecutions. But the same words have been construed as they appear in N.Y. Stock Corporation Law, § 90 (con-

---

action, suit, or proceeding") was decided on authority of the Collier case, infra. The Maryland question was decided under a statute which provides "that the corporation shall continue in existence for the purpose of paying, satisfying and discharging any existing debts and obligations."

State statutes providing for the maintenance of an "action" against dissolved corporations have been held not to permit maintenance of a federal criminal proceeding in United States v. Line Material Co., supra; and United States v. Safeway Stores, supra (Cal. law). The contrary result has been reached in United States v. United States Vanadium Corp., supra (N.Y. law); United States v. Maryland State Licensed Beverage Ass'n, supra (Del. law); and United States v. Cigarette Merchandisers Ass'n, D.C.S.D. N.Y.1955, 136 F.Supp. 214 (merger after indictment; N.Y. law).

A state statute permitting maintenance of "proceedings" against dissolved corporations was held not to permit maintenance of a federal criminal action in United States v. Line Material Co., supra. The contrary result was reached in United States v. P. F. Collier & Son Corp., 7 Cir., 1953, 208 F.2d 936 (dissolution prior to information; Del. law);

United States v. Maryland & Virginia Milk Producers, D.C.D.C.1956, 145 F. Supp. 374 (merger after indictment; Del. law); United States v. Maryland State Licensed Beverage Ass'n, supra (Del. law).

Use of the words "liability" or "obligations" has been held to permit maintenance of a federal criminal prosecution against a dissolved corporation in United States v. Cigarette Merchandisers Ass'n, supra; and in United States v. Maryland State Licensed Beverage Ass'n, supra, (Md. law).

See also the cases arising under Texas law cited in footnote 6, supra.

8. See Alamo Fence Co. of Houston v. United States, supra note 6. Cf. Re Watts, 1903, 190 U.S. 1, 23 S.Ct. 718, 47 L.Ed. 933. And see, United States v. Western Pennsylvania Sand & Gravel Ass'n, D.C.W.D.Pa.1953, 114 F.Supp. 158, in which a preliminary injunction was issued to prevent dissolution of a Pennsylvania corporation against which there was pending an order to show cause why it should not be punished for civil and criminal contempt.

9. Fed.R.Civ.P. 17(b) provides that "[t]he capacity of a corporation to sue or be sued shall be determined by the law under

solidated corporations) and N.Y. General Corporation Law, McKinney's Consol. Laws, c. 23, § 216 (surrender of authority to do business by a foreign corporation). The "analogy of kindred statutes"[10] is an excellent source for determining the content of the words "liabilities or obligations" as they appear in N.Y. Stock Corporation Law § 105.

N.Y. General Corporation Law, § 216, subd. 1, par. e provides that a foreign corporation which surrenders its authority to do business within New York shall file a certificate with the Department of State, stating, among other things:

> "That it consents that process against it in an action or proceeding upon any *liability or obligation* incurred within this state before the filing of the certificate of surrender . of authority, after the filing thereof, may be served upon the secretary of state." (Emphasis added.)

In People v. Bankers' Capital Corp., Sup. Ct.Kings Co.1930, 137 Misc. 293, 241 N. Y.S. 693, the Court held that this section provided for service of process upon the secretary of state in a criminal action for violation of New York's Martin Act against a foreign corporation which had surrendered its authority. The criminal action was held to be an action upon a "liability or obligation."

This Court has held that the same section of New York law permitted the service upon the secretary of state of a Federal Grand Jury's subpoena *duces tecum* addressed to a foreign corporation

which had surrendered its authority to do business in New York. The Court held that a criminal prosecution under the Sherman Anti-Trust Act, 15 U.S.C. A. §§ 1–7, 15 note, violations of which were being .investigated by the Grand Jury, was an action or proceeding "upon any liability or obligation." In re Grand Jury Subpoenas Duces Tecum, D. C.S.D.N.Y.1947, 72 F.Supp. 1013, 1021.

N.Y. Stock Corporation Law, § 90 provides, in pertinent part, as follows:

> "The rights of creditors of ˙ any constituent corporation shall not in any manner be impaired, nor shall any *liability or obligation* due or to become due, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation * * *." (Emphasis added.)

In United States v. Cigarette Merchandisers Ass'n, D.C.S.D.N.Y.1955, 136 F. Supp. 214, 217, the Court held that the ˙words "liability or obligation" include penalties and fines imposed under the Sherman Anti-Trust Act.[11]

Accordingly, I hold that violation of the federal criminal statutes was one of the "obligations or liabilities" for satisfaction and discharge of which the New York law continues the existence of defendant corporation after voluntary dissolution. The motions are, therefore, denied, and defendant corporation is directed to appear and to answer the indictment within ten days.

So ordered.

---

which it was organized." There is no counterpart in the Federal Rules of Criminal Procedure.

10. City of New York v. New York & South Brooklyn Ferry & Steam Transp. Co., 1921, 231 N.Y. 18, 23, 131 N.E. 554, 556, 16 A.L.R. 1059, (per Cardozo, J.).

11. Cf. United States v. Maryland State Licensed Beverage Ass'n, supra note 7.

And see United States v. P. F. Collier & Son Corp., supra note 7, 208 F.2d at page 940: "Again, if dissolution by reason of ·the statute works no extinguishment of a legal right, we discern no reason why it works an extinguishment of a *legal liability, whether civil or criminal.*" (Emphasis added.)