UNITED STATES of America, Plaintiff,

v.

ARCOS CORPORATION, The McKay Company, Air Reduction Company, Incorporated, and Alloy Rods Company, Defendants.

No. Cr. 64-200.

United States District Court
N. D. Ohio, E. D.
Sept. 22, 1964.

Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, Lester P. Kauffmann and Rodman M. Douglas, Cleveland, Ohio, of counsel. William H. Orrick, Jr., Asst. Atty. Gen., Harry G. Sklarsky and Norman H. Seidler, Dept. of Justice, Washington, D. C., for plaintiff.

Walter A. Bates, Cleveland, Ohio, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, of counsel; Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for defendant Alloy Rods Co.

GREEN, District Judge.

On May 11, 1964 an indictment was returned in this court against four defendants, charging a conspiracy under the Sherman Act, 15 U.S.C.A. § 1.

Defendant Alloy Rods Company has moved for a dismissal of the indictment as to it, Rule 12, Federal Rules of Criminal Procedure. The basis of the said motion is that Alloy Rods has been dissolved as a corporation, and consequently no longer "exists" for purposes of criminal prosecution.[1]

There is no dispute as to the facts herein. Alloy Rods was incorporated under the laws of the State of Pennsylvania in 1946. In 1961 Alloy Rods entered into negotiations to sell substantially all of its assets to the Chemetron Corp. for stock, as a part of which transaction it was contemplated that Alloy Rods would be dissolved. The sale was consummated on February 14, 1962, and on March 18, 1963, pursuant to the laws of Pennsylvania, a Certificate of Dissolution was issued to Alloy Rods Company.

There is no suggestion by the Government that the dissolution was for purposes of avoiding prosecution under the Sherman Act, or was in any other manner fraudulent. By affidavit, defendant's former President stated that at the time the agreement of sale was entered into

---

1. The Sherman Act provides that the word "person" includes corporations existing under the laws of any State, 15 U.S.C.A. § 7.

Alloy Rods had no knowledge of any grand jury investigation of its business affairs.

This case hinges upon the interpretation of § 2852–1111 of the Pennsylvania Business Corporation Act, 15 Pa.Stat. Ann. § 2852–1111. That code section reads:

"The dissolution of a business corporation * * * shall not take away or impair any remedy given against such corporation, its directors or shareholders, for any liability incurred prior to such dissolution, if suit thereon is brought and service of process had before or within two years after the date of such dissolution. Such suits may be prosecuted against and defended by the corporation in its corporate name."

It is the Government's position that this statute continues the existence of the corporation beyond the formal date of dissolution for purposes of prosecution under the Sherman Act. Defendant contends that the continuance provided for is only as to civil suits, and that the corporation is no longer amenable to any criminal prosecution.

■■ The leading authority on this question is Melrose Distillers, Inc. v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959). In Melrose, the Supreme Court had before it statutes from Maryland and Delaware, each of which provided that any "proceedings" brought against a dissolved corporation would not abate for a specified period of time. In coming to its conclusion that the affected corporations were subject to prosecution, the Supreme Court stated:

"The question whether a corporation 'exists' for any purpose is thus determined by reference to state law.

* * * * * *

"We have found no Maryland decisions interpreting these sections; but we are satisfied that the term 'proceeding,' no matter how the state court may construe it, implies enough vitality to make the corpora-

tion an 'existing' enterprise for the purposes of § 8 of the Sherman Act.

* * * * * *

"We conclude that irrespective of how the Delaware statute may be construed by the Delaware courts, it sufficiently continued the existence of this corporation for the purpose of § 8 of the Sherman Act."

This Court reads the foregoing pronouncements as establishing the following proposition: In determining whether a dissolved corporation "exists", within the meaning of the Sherman Act, the Federal Courts must look to the law of the State to see if there is any statutory authority from which the Court may determine the existence of post-dissolution vitality.

The question this Court must therefore resolve is whether, under the Pennsylvania statute, Alloy Rods has continued vitality to be required to answer to the offense charged.

Defendant relies upon United States v. Line Material Co., 202 F.2d 929 (CA6 1953) and United States v. Safeway Stores, Inc., 140 F.2d 834 (CA10 1944) in support of its position. The Line Material decision predated Melrose, and reached a conclusion contrary to that of the Supreme Court in Melrose as to the effect of the Delaware statute. Similarly, Safeway Stores involved the Delaware statute, as well as essentially similar statutes of California, Texas and Nevada, and the holding therein is not in accord with the Melrose ruling. The fact of the matter is that certiorari was granted in Melrose on the basis of a conflict among the circuits, with the Line Material decision specifically noted, and the decision rendered therein by the Supreme Court was in accord with the decisions contrary to Line Material and Safeway Stores.

On the other hand, the decisions cited by the Government all involve statutes similar to that considered by the Supreme Court in Melrose, and dissimilar to that before the Court.[2] Statutes containing

2. The Court does not consider the case of Union Carbide and Carbon Corp. v.

Nisley, 300 F.2d 561, 571 (CA 10, 1961) in point.

the words "proceeding", "Judicial proceeding", or "legal proceeding" were before the courts in United States v. Carter, 311 F.2d 934 (CA6, 1963), United States v. Anaconda American Brass Co., 210 F. Supp. 873 (D.C.Conn., 1962), United States v. Armour and Co., (unreported Crim. No. 30936, D.C.S.D.Cal., 1962), United States v. San Diego Grocers Assoc., Inc., 177 F.Supp. 352 (D.C.S.D.Cal., 1959), Alamo Fence Co. v. United States, 240 F.2d 179 (CA5, 1957) and United States v. P. F. Collier & Son Corp., 208 F.2d 936 (CA7, 1953), 40 A.L.R.2d 1389. See also United States v. Maryland & Virginia Milk Producers, Inc., 145 F. Supp. 374 (D.C.D.C., 1956) and United States v. Maryland State Licensed Beverage Assoc., 138 F.Supp. 685 (D.C.Md., 1956). This line of authority is of questionable applicability herein, being restricted to consideration of language specifically passed on in the Melrose decision, which language is not found in the Pennsylvania statute.

The only persuasive authority which the Court has been able to discover is found in United States v. Brakes, Inc., 157 F.Supp. 916 (D.C.S.D.N.Y., 1958) and United States v. Cigarette Merchandisers Ass'n, 136 F.Supp. 214 (D.C.S.D. N.Y., 1955). In each of those cases the Court held that continued existence of a dissolved corporation for purposes of discharging "any liabilities or obligations" included continued existence to answer to criminal charges.

More particularly, in the Cigarette Merchandisers case the issue was whether a dissolved corporation could be proceeded against under the Sherman Act. The controlling New York statute provided:

"The rights of creditors of any constituent corporation shall not in any manner be impaired, nor shall any *liability or obligation* due or to become due, or any claim or demand for any cause existing against any such corporation or against any stockholder thereof be released or impaired by any such consolidation; * * * and no *action* or *proceeding* then pending before any court or tribunal in which any constituent corporation is a party * * * shall abate or be discontinued by reason of such consolidation, but may be prosecuted to final judgment, as though no consolidation had been entered into." United States v. Cigarette Merchandisers, supra, pp. 215–216.

In reaching its conclusion that this statute continued the corporate existence for purposes of prosecution, the court not only anticipated the ruling of the Supreme Court in Melrose on the effect of the word "proceedings," but, in addition, stated:

"I have not overlooked the defendant's other contentions. Contrary to its view, the words 'liability or obligation' have been construed, and in my view correctly so, to include penalties or fines imposed for violations of the Sherman anti-trust statute and quasi-criminal actions or proceedings." id., p. 217.

It was this Court's original belief that, under the Melrose doctrine, the Pennsylvania statute which provides that dissolution shall not "take away or impair *any remedy* given against such corporation * * * for *any liability* incurred prior to such dissolution" was broad enough to encompass continued vitality for criminal prosecution under the Sherman Act. The decisions hereinabove cited have reinforced that belief. The Court has also taken note of the statement by the Supreme Court that:

"As the Court of Appeals noted, a corporation cannot be sent to jail. *The discharge of its liabilities* whether criminal or civil can be effected only by the payment of money." Melrose Distillers, Inc. v. United States, 359 U.S. 271, 274, 79 S.Ct. 763, 766 (emphasis added).

As a final observation, this Court concurs in the following statement from

United States v. Cigarette Merchandisers Ass'n:

"But apart from any statutory definition, I am also of the view that since the clear public policy of the state with respect to a dissolved or consolidated corporation is that it shall, for a determined period beyond its dissolution, be entitled to pursue its rights and also to remain suable for its debts and obligations, that the public purpose also contemplates the right of the community to vindicate any charge against the corporation for crimes it may have committed prior to dissolution. And unless the legislative purpose to abate a criminal prosecution is clear and unequivocal, the public policy of the state to hold a corporation liable for acts committed during its existence should not be defeated by dialectical definitions which serve to discriminate against the community at large." 136 F.Supp. 214, 217.

Motion of defendant Alloy Rods Company to dismiss the indictment is denied.